## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| REGINA M. CHRISTMAS,<br>*Plaintiff,*<br><br>v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF<br>SOCIAL SECURITY,<br>*Defendant.* | CASE NO. 3:09-cv-00005<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon the parties' cross motions for summary judgment (docket nos. 8 and 10), the Report & Recommendation of the United States Magistrate Judge B. Waugh Crigler (docket no. 13), and the Commissioner's Objections to the Report & Recommendation (docket no. 14) and Plaintiff's Response thereto (docket no. 15). The Court had referred this matter to the Magistrate Judge for proposed findings of fact and a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) (docket no. 7). The Magistrate Judge filed his Report & Recommendation that recommended this Court enter an order granting Plaintiff's Motion for Summary Judgment, reversing the Commissioner's final decision, and recommitting the case to the Commissioner solely to calculate and pay proper benefits. The Commissioner timely filed objections to the Report & Recommendation, obligating the Court to undertake a *de novo* review of those portions of the Report & Recommendation to which objections were made. *See* 28 U.S.C. § 636(b)(1)(B); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

For the following reasons, the Court will decline to adopt the Report & Recommendation of the United States Magistrate Judge (docket no. 13), will overrule the Commissioner's Objections to

the Report & Recommendation (docket no. 14), will deny the Commissioner's Motion for Summary Judgment (docket no. 10), will deny in part Plaintiff's Motion for Summary Judgment (docket no. 8), to the extent that said Motion requested a reversal of the Commissioner's decision with the direction that Plaintiff be awarded benefits, and will grant in part said Motion, to the extent that it requested a remand and only insofar as is consistent with the following Memorandum Opinion, will reverse the Commissioner's final decision denying Plaintiff benefits, and will remand the case to the Commissioner for further consideration at the final two levels of evaluation, with instructions to expressly indicate the weight given to all relevant evidence.

## I. BACKGROUND

On December 26, 2002, Plaintiff Regina M. Christmas filed an application for Disability Insurance Benefits and an application for Supplemental Security Income payments, under Titles II and XVI of the Social Security Act, 42 U.S.C.A. §§ 401-433, 1381-1383d (West 2003 and Supp.2009) (hereinafter "the Act"), alleging that she became disabled as of November 20, 2002. This Court has jurisdiction pursuant to 42 U.S.C.A §§ 405(g) and 1383(c)(3).

At the time she filed her applications, Christmas was forty years old, and claimed that she was disabled (and thus unable to work) due to her Ehlers-Danlos syndrome[1] and leg length discrepancy. (R. 67). Prior to the onset of her alleged disability, Christmas had most recently worked as a Certified Nursing Assistant (hereinafter "CNA") at a nursing services business from September

---

[1] According to information the Ehlers-Danlos National Foundation posted on its website, which has been made part of the record, "[i]ndividuals with [Ehlers-Danlos syndrome] have a defect in their connective tissue, the tissue which provides support to many body parts such as the skin, muscles and ligaments. The fragile skin and unstable joints found in [Ehlers-Danlos syndrome] are the result of faulty collagen. Collagen is a protein which acts as a 'glue' in the body, adding strength and elasticity to connective tissue. Ehlers-Danlos syndrome (EDS) is a heterogeneous group of heritable connective tissue disorders, characterized by articular (joint) hypermobility, skin extensibility and tissue fragility." (R. 170). An article on Ehlers-Danlos syndrome from the University of Washington School of Medicine, which is also included in the record, provides that it "is a group of hereditary disorders that affects mainly the skin and joints, but other organs as well. EDS results in weakness and/or excessive flexibility of the connective tissues of the body." (R. 173).

to December of 2002 and before that at a nursing home, and had previously worked as a cook at a retirement home from May to October of 2001. (R. 82). Christmas testified that she had been a CNA for approximately 25 years, and within the past 15 years had also been employed as a seamstress supervisor for roughly six months. (R. 187-188). She has received her GED. (R. 197-198).

## A. The First ALJ Decision

Her claims were initially denied on April 17, 2003, and were denied again on reconsideration on July 21, 2003. (R. 29, 30). On August 13, 2003, Christmas subsequently filed a request for a hearing before an Administrative Law Judge (hereinafter "ALJ") to contest the determination on her claims, alleging that she was disabled due to her "physical impairments" and also because she suffered from depression and mood swings. (R. 40). On June 2, 2004, a hearing was held before the ALJ on Christmas's claim. (R. 42, 51).

In his decision rendered on June 25, 2004 (hereinafter "first ALJ decision"), the ALJ ultimately concluded that Christmas was not disabled under the Act. (R. 20-27). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry."[2] *Wells v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The ALJ determined that the first step of this inquiry was satisfied, as Christmas had not engaged in substantial gainful activity since the alleged onset of her disability. (R. 24). At the second and third steps, the ALJ found that Christmas's Ehlers-Danlos syndrome and leg length discrepancy constituted a severe impairment, however, these conditions nevertheless did not meet or medically equal one of the listed impairments in any section of 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21, 24-26). Before the ALJ proceeded to steps four and

---

[2] "The five step inquiry asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work." *Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520 (2005)).

five of the analysis, he was required to assess Christmas's residual functional capacity (hereinafter "RFC").[3] *See* 20 C.F.R. § 416.920(a)(4). Articulating the reasons for claiming disability, Christmas had alleged that she suffered impairments in the form of Ehlers-Danlos syndrome and leg length discrepancy, and complained of limitations in her ability to walk, sit or stand, diffuse chronic pain, severe pain in her joints (particularly in her ankle and hip), and depression. (R. 22-24, 40, 67, 74-75). The ALJ found that Christmas's allegations concerning her impairments and symptoms were not entirely credible. (R. 25-26). With respect to her depression, the ALJ found that Christmas had not proffered sufficient documentation to support a finding that it was a severe impairment, noting that Christmas neither sought nor received treatment for depression, and was not referred to a mental health professional by Dr. Donald Kimpel when Christmas mentioned her depression during an appointment. (R. 24, 25, 131-33). With respect to Ehlers-Danlos syndrome, the ALJ afforded less deference to the opinions of Dr. Steven Lommatzsch, M.D. (one of Christmas's primary care physicians at the University of Virginia) found in the Physical Limitations Assessment form, on the basis that they were reached after his first appointment with Christmas and thus did not reflect a history of treatment. (R. 23). Instead, the ALJ credited the report of Dr. Thaddeus Kelly, M.D., Ph.D., Medical Geneticist at the University of Virginia to whom Christmas was referred regarding the Ehlers-Danlos diagnosis, as the "record's best description of Ehlers-Danlos syndrome." (R. 24, 111). The ALJ found nothing in Dr. Kelly's report to suggest that Ehlers-Danlos syndrome would cause the limitations or symptoms alleged by Christmas, or documented by Dr. Lommatzsch in the Physical Limitations Assessment, and found instead that Christmas's activities, treatment history,

---

[3] Residual functional capacity is defined as the most that the claimant can do in a work setting, despite the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations" which affect the claimant's performance. *See* 20 C.F.R. § 404.1545(a)(1).

and medication usage did not support the existence of concentration deficits or the need for unpredictable and/or lengthy periods of rest. (R. 24).

In sum, the ALJ concluded that while Ehlers-Danlos syndrome and leg length discrepancy constituted a severe impairment, they did not meet or medically equal any listed impairment and Christmas maintained the RFC to perform a wide range of sedentary work. (R. 24-26). Finding that there were "a significant number of jobs in the national economy" that she could perform, the ALJ determined that she was not "disabled" under the Act. (R. 25-26).

Christmas sought review of the first ALJ decision, which the Appeals Council denied on April 29, 2005. (R. 247-249). Thereafter, on June 22, 2005, Christmas brought suit in this Court seeking judicial review of the final decision of the Commissioner of Social Security. *See Christmas v. Barnhart*, No. 3:05-cv-00027 (W.D. Va. Feb. 22, 2006). On January 26, 2006, the United States Magistrate Judge issued a Report & Recommendation in which it was recommended to the Court that because the evidence Christmas proffered to the Appeals Council was both new and material, *i.e.*, bearing on the connection between her Ehlers-Danlos syndrome and the severity of her symptoms, a remand was warranted. (R. 257-259). Furthermore, the Magistrate Judge recommended that the ALJ's reliance upon the Medical-Vocational Guidelines (hereinafter "the Grids")[4] was improper, because Christmas suffered from certain non-exertional impairments such as limitations in her ability to kneel, crawl and reach. (R. 259-260). By Memorandum Opinion and Order issued on February 22, 2006, the Court adopted the Report & Recommendation and remanded to the Commissioner for further proceedings, holding that (1) the signed statement by Dr. Kelly submitted

---

[4] The Grids are tables "that indicate the proper disability determinations for various combinations of age, education, and previous work experience in conjunction with the individual's residual functional capacity, *i.e.*, his maximum capacity for sustained performance of the physical and mental requirements of the job." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). However, because the Grids "do not take into account nonexertional limitations such as pain, loss of hearing, loss of manual dexterity, postural limitations and pulmonary impairment," when such limitations "occur in conjunction with exertional limitations," the Grids "are not to be treated as conclusive." *Coffman v. Bowen*, 829 F.2d

to the Appeals Council rendered the decision of the ALJ contrary to the weight of the evidence; and (2) the ALJ's reliance on the grids was improper because Christmas suffered from certain non-exertional impairments. (R. 259-260).

## B. The Second ALJ Decision

On remand, a supplemental hearing was held before the ALJ on July 19, 2006. (R. 299, 312). The ALJ issued a decision on November 24, 2006 (hereinafter "second ALJ decision"), which again concluded that while Ehlers-Danlos syndrome did constitute a severe impairment, it did not meet or medically equal one of the listed impairments in the applicable regulations. (R. 218-219). The ALJ found that Christmas's claims were not entirely credible, and that she retained the RFC to perform sedentary work that accommodates a "sit-stand" option. (R. 219-220). In reaching this conclusion, the ALJ noted that this time he afforded great weight to the assessment of Christmas's treating physician, Dr. Lommatzsch, and to the testimony of the medical expert, Dr. Haddon Alexander, III, and less weight to Dr. Kelly on the grounds that "he is more of an academic than [a] treating doctor and while he participates in the identification of genetic illnesses he is not her normal treating physician." (R. 219-220). The ALJ referred to the Physical Limitations Assessment, in which Dr. Lommatzsch had indicated that Christmas could perform sedentary work, (R. 149, 220), and the testimony of Dr. Alexander, who stated that he had treated patients with Ehlers-Danlos syndrome and, in his experience, where this syndrome did not cause end organ damage (it had not done so for Christmas), it caused only minimal pain. (R. 219). The ALJ also found that there are a significant number of jobs available for someone with Christmas's RFC in the national economy, such as an information clerk or an order clerk, (R. 220-221), and consequently, the ALJ determined that

---

514, 518 (4th Cir. 1987) (internal citations omitted).

Christmas was not disabled under the Act. (R. 221). Christmas sought review of the second ALJ decision, which the Appeals Council denied on December 19, 2008. (R. 201-203).

C. Summary Judgment Motions

On February 2, 2009, Christmas initiated the instant action seeking review of the final decision of the Commissioner, and on June 15, 2009, the Court referred this matter to the United States Magistrate Judge for a Report & Recommendation (docket no. 7). In support of her Motion for Summary Judgment, Christmas principally argued that the ALJ did not provide a legally sufficient explanation for the decision to give great weight to the opinion of Dr. Lommatzsch, but then ignore his findings that Christmas "has a medical condition which reasonably could be expected to cause significant pain resulting in interruption of activities and/or concentration during a work day" and a condition "which reasonably could be expected to require unpredictable and/or lengthy periods of rest during the work day." Plaintiff's Memorandum in Support of Motion for Summary Judgment, at 14-17.

On September 14, 2009, the Magistrate Judge issued a Report & Recommendation (docket no. 13) agreeing with Christmas that the ALJ improperly discredited these aspects of Dr. Lommatzsch's opinion, especially because it was supported by other evidence in the record. Report & Recommendation, at 3-6. The Magistrate Judge found that Dr. Lommatzsch's opinion was supported by other evidence in the record, notably the statement of Dr. Kelly that Christmas "must recline for periods frequently throughout the day," and the Magistrate Judge stated that "[n]owhere is this evidence discredited. It corroborates the views of the treating source, whose evidence must be given great weight and special consideration absent substantial evidence to the contrary." *Id*. at 5. Furthermore, the Magistrate Judge noted that if Christmas possessed these limitations described by Dr. Lommatzsch, the "clear evidence" from the testimony of the vocational expert, Bonnie S.

Martindale, was that no jobs would be available to Christmas. *Id*. at 3 n.2. Because he found that the aforementioned evidence was "nowhere discredited," the Magistrate Judge wrote that the ALJ "appears simply to have substituted his judgment for those of both a specialist in the field and plaintiff's primary treating source." *Id*. at 5-6.

The Commissioner filed its Objections to the Report & Recommendation on September 15, 2009 (docket no. 14), on the grounds that the Magistrate Judge disregarded the fact that the ALJ had relied, in large part, upon the testimony of the medical expert, Dr. Alexander. Commissioner's Objections, at 2. The Commissioner contends that according to this testimony, Christmas's Ehlers-Danlos syndrome resulted in no evidence of hip or knee arthritis, no evidence of recurrent significant dislocations, and no evidence of scoliosis, and therefore this testimony "fully supports the ALJ's RFC finding and undermines the alleged need for Plaintiff to recline throughout the day, is substantial evidence … which compels an affirmance of the ALJ's decision." *Id*. at 3. The Commissioner also argues that the opinions of Dr. Kelly and Dr. Lommatzsch concerning Christmas's alleged limitation of needing to recline throughout the day were unsupported by the evidence in the record. Commissioner's Objections, at 3-4. On September 27, 2009, Christmas filed her Response to the Commissioner's Objections (docket no. 15). She argues that the ALJ's attempt to reject Dr. Lommatzsch's findings on Christmas's pain and need for rest could not, in light of the Court's Memorandum Opinion of February 22, 2006, be supported by the first ALJ decision, and was not adequately explained in the second ALJ decision. Plaintiff's Response to Commissioner's Objections, at 5-7. Critically, as a result, "the medical expert's testimony cannot cure the legal error resulting from the ALJ decision's failure to evaluate the medical evidence of the treating physicians in accordance with the Commissioner's regulations and federal law." *Id*. at 10.

## II. STANDARD OF REVIEW

The Court must uphold the factual findings of the Commissioner if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion," *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971)), and consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision was supported by substantial evidence, the Court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, a court may not undertake a *de novo* review of the Commissioner's decision, and the fact that the record may support a conclusion inconsistent with that of the Commissioner is immaterial. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

While the Court is required to uphold the factual determinations of the ALJ if they are supported by substantial evidence, the Court "is not so restrained in determining whether correct legal standards were applied." *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989) (citing *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)). When the Court is faced with a situation in which it "cannot know why the ALJ rejected relevant evidence in the record," it is frequently held "that a

remand is necessary to clarify the basis for the decision to deny benefits." *Durham v. Apfel*, 225 F.3d 653, 2000 WL 1033060, at *5 (4th Cir. July 27, 2000) (table). *See also Stroup v.* Apfel, 205 F.3d 1334, 2000 WL 216620, at *6 (4th Cir. Feb. 24, 2000) (table) (remanding the case where ALJ did not adequately explain why reports of two non-treating medical experts were a sufficient basis for rejecting treating physician's opinion); *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (remanding the case where ALJ did not sufficiently explain reasons why he credited one doctor's views over those of another doctor).

## III. DISCUSSION

### A. ALJ's Consideration of Treating Physician Testimony

Christmas principally argues that "[t]he ALJ decision improperly addressed only the one portion" of Dr. Lommatzsch's Physical Limitations Assessment "which could be considered to be unfavorable," namely the statement that Christmas "could sit and do sedentary work." Plaintiff's Memorandum in Support, at 15. The ALJ, according to Christmas, "improperly rejected" two significant limitations identified by Dr. Lommatzsch in the Physical Limitations Assessment, which are that Christmas "has a medical condition which reasonably could be expected to cause significant pain resulting in interruption of activities and/or concentration during a work day" and a condition "which reasonably could be expected to require unpredictable and/or lengthy periods of rest during a work day." *Id*. at 16. If Christmas possessed these limitations, the evidence from the vocational expert's testimony is that there would be no jobs available. Report & Recommendation, at 3 n.2.

Christmas argues that the ALJ's treatment of the medical evidence of Dr. Lommatzsch is flawed for several reasons. First, she states that "[t]he second ALJ decision does not credit or even substantively discuss that portion of Dr. Lommatzsch's assessment that established Plaintiff's disabling pain and need to rest." Plaintiff's Memorandum in Support, at 16. The ALJ's evaluation of

this evidence, it is alleged, "fails to comply with the requirement that the ALJ must explain the weight given an opinion, and it fails to comply with the law governing the evaluation of the medical evidence." Plaintiff's Response to Defendant's Objections, at 6. Next, Christmas contends that the ALJ was not permitted to rely upon his previous decision to reject Dr. Lommatzsch's opinions, in light of the Court's language in the Memorandum Opinion that had reversed the first ALJ decision. *Id*. at 17. The Court had previously stated that "[t]here is little or nothing in the record to imply that Plaintiff's allegations are not credible, and that she is not suffering from the symptoms that she alleges." (R. 259). The Court reached this conclusion after reviewing the record, which included Dr. Lommatzsch's Physical Limitations Assessment, two statements from Dr. Kelly, the specialist to whom Christmas was referred regarding Ehlers-Danlos syndrome) and other evidence in Christmas's treatment history.

In response, the Commissioner argues that the testimony of the medical expert, Dr. Alexander, "which fully supports the ALJ's RFC finding and undermines the alleged need for Plaintiff to recline throughout the day, is substantial evidence, i.e., more than a scintilla and less than a preponderance, which compels affirmance of the ALJ's decision." Commissioner's Objections, at 3. The Commissioner also argues that the opinions of Dr. Kelly and Dr. Lommatzsch concerning Christmas's limitations due to pain and the need to rest and recline were unsupported by evidence or their contemporaneous treatment notes. *Id*. at 3-4. Therefore, the Commissioner contends that the findings of the ALJ were supported by substantial evidence. *Id*.

The Court agrees that the ALJ did not sufficiently articulate his reasons for discrediting certain portions of the opinions of Christmas's treating physician, Dr. Lommatzsch, namely that Christmas had a medical condition "which reasonably could be expected to cause significant pain resulting in interruption of activities and/or concentration during a work day," and "which

reasonably could be expected to require unpredictable and/or lengthy periods of rest during a work day." The ALJ gave the opinions of Dr. Lommatzsch "great weight" in the second ALJ decision, as he did the opinions of Dr. Alexander, the medical expert. To the extent that the ALJ relied upon the opinions of the medical expert contrary to that of Dr. Lommatzsch, when "great weight" was given to both, the ALJ did not sufficiently articulate reasons for crediting one opinion over the other.

## B. Applicable Law

In reaching this conclusion, the Court is guided by well-established principles on weighing medical opinion testimony. While a court is generally required to accord greater weight to the testimony of a treating physician, it need not always be given controlling weight. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (citing *Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir. 1986)). Where a treating physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. "[T]he testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record," *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (citing *Martin v. Secretary*, 492 F.2d 905 (4th Cir. 1974)), however it may properly "be relied upon when it is consistent with the record." *Id.* (citing *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir. 1971)). In circumstances where there is conflicting medical expert evidence from examining or treating physicians, "a determination [by the ALJ] coming down on the side of the non-examining, non-treating physician should stand." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

When the evidence is such that reasonable minds might differ as to whether a claimant is disabled, the decision falls to the Commissioner to resolve the inconsistencies. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). However, while it is undoubtedly the province of the ALJ to

resolve conflicts in the evidence, *Kasey v. Sullivan*, 3 F.3d 75, 79 (4th Cir. 1993), the ALJ must articulate his reasons for crediting one piece of evidence over another. *See e.g.*, *Sanderlin v. Barnhart*, 119 F. App'x 527, 528 (4th Cir. 2005) (noting that "[w]hen there are conflicting physician opinions," the court has "required explicit indications as to the weight given to all the evidence"); *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (stating that the ALJ "is required to explicitly indicate the weight given to all relevant evidence"); *Smith v. Schweiker*, 671 F.2d 789, 793 (3d Cir. 1982) (noting that "the ALJ may not ignore conflicting evidence; he must instead explain his reasons for rejecting it").

### C. Testimony of Dr. Lommatzsch and Dr. Alexander

In reaching the outcome in his second decision, the ALJ stated that he had "accorded great weight [to] the testimony of the medical expert," Dr. Alexander, "and the assessment of [Christmas's] treating physician, Dr. Lommatzsch." (R. 219). However, he "assign[ed] less weight to her medical geneticist," Dr. Kelly, on the reasoning that "he is more of an academic than treating doctor and while he participates in the identification of genetic illnesses[,] he is not her normal treating physician." (R. 219-220).

In his second decision, the ALJ performed a review of the medical expert evidence on the record. In so doing, the ALJ expressly incorporated by reference the section of his first decision under the heading, "Evaluation of the Evidence." (R. 213-214). The portion of the first ALJ decision concerning the assessment of Dr. Lommatzsch read, in pertinent part, as follows:

> On May 26, 2004, the claimant saw Dr. Lommatzsch and obtained a "letter of medical necessity" for a left knee brace and had Dr. Lommatzsch complete a "physical limitations assessment" form for use in the claimant's disability case.
>
> *It appears that the* [sic] *Dr. Lommatzsch completed the "physical limitations assessment" form on the day that he first saw the claimant; therefore, his assessment was not based on a long history*

– 13 –

*of treatment*. Dr. Lommatzsch indicated that the claimant could lift and carry 10 pounds, stand/walk for .5 hour to 1 hour at a time and sit without limitation. He indicated that she should not kneel, crawl or be exposed to moving machinery but that she could assume other postures occasionally and that she would not need to elevate her leg during the day. Dr. Lommatzsch said that the claimant was limited to sedentary work 'because of inability to walk/stand for six hours out of 8."

Dr. Lommatzsch also checked boxes to indicate that the claimant to had [sic] a medical condition that could reasonably be expected to produce pain that would interfere with the claimant's activities and concentration and that she had a medical condition that could reasonably be expected to require unpredictable and/or lengthy rest periods during the work day. He did not identify the medical condition(s) that could reasonably be expected to produce these limitations.

(R. 23-24) (emphasis added). In the second ALJ decision, he wrote as follows concerning the

assessment of Dr. Lommatzsch:

In my first decision, I explained that the record did not support Dr. Lommatzsch's statements that the claimant had a medical condition(s) that could reasonably be expected to produce pain that would interfere with the claimant's activities and concentration or require her to take unpredictable and/or lengthy rest periods during the workday.

[Dr. Lommatzsch] provided a Physical Limitation Assessment finding that the claimant could perform the full range of sedentary work. *He felt she might have some pain and some periods of unpredictable rest but that elevation of the legs was not necessary.* Overall, he said there were no restrictions on sitting.

(R. 214) (emphasis added). Finally, in reaching his determination that Christmas retained the RFC

necessary to perform sedentary work, the ALJ reiterated all aspects of Dr. Lommatzsch's opinion

found in the Physical Limitations Assessment, without mentioning the two critical limitations he

identified concerning her pain causing interruption of activities and/or concentration, and

unpredictable and/or lengthy periods of rest:

Turning now to the opinion expressed by Dr. Lommatzsch [in the Physical Limitations Assessment]. On May 26, 2004, the claimant saw Dr. Lommatzsch and received a prescription for left knee brace and obtained his signature and assessments on a Physical Limitations Assessment. Dr. Lommatzsch said that the claimant's condition was stable and that she could lift/carry 10 pounds, stand/walk for ½ hour to 1 hour at a time, sit without limitation, never kneel or crawl, occasionally stoop, climb, balance, crouch, push, pull, and reach. *He said the claimant could sit and do sedentary work. I essentially agree with him.*

(R. 220) (citations to record omitted) (emphasis added).

Instead, the ALJ appeared to rely upon contrary testimony of the medical expert in order to refute, discredit, or otherwise give less than "great weight" to Dr. Lommatzsch's assessment that Christmas suffered from these two critical limitations. The ALJ cited testimony from the medical expert that Christmas's "allegations of joint stiffness could not reasonably be attributed to Ehlers-Danlos syndrome, which causes joint laxity and dislocation, but does not cause joint stiffness." (R. 219). Furthermore, the medical expert had crucially testified that "when Ehlers-Danlos syndrome did not produce end organ damage, it caused minimal pain," and that Christmas "did not have evidence of end organ damage due to Ehlers-Danlos syndrome." (*Id.*).

The ALJ may not gloss over or ignore conflicting evidence, *Smith*, 671 F.2d at 793, but instead, must "explicitly indicate the weight given to all relevant evidence." *Murphy*, 810 F.2d at 437. In this case, the ALJ expressly credited the testimony of Christmas's treating physician, Dr. Lommatzsch, and the medical expert, Dr. Alexander, giving both "great weight." Yet the opinion of Dr. Lommatzsch was that Christmas suffered from a medical condition "which reasonably could be expected to cause significant pain resulting in interruption of activities and/or concentration during a work day," and "which reasonably could be expected to require unpredictable and/or lengthy periods of rest during a work day." (R. 149). And the opinion of Dr. Alexander was that based upon his review of the evidence, Ehlers-Danlos syndrome caused minimal pain where it did not produce end

– 15 –

organ damage, and Christmas did not have evidence of end organ damage. (R. 219). Furthermore, the ALJ cited Dr. Alexander's testimony that Christmas "had Ehlers-Danlos syndrome with some of its manifestations, but that the manifestations were mild and that [Christmas] did not have end-organ damage or recurrent dislocations," and that such manifestations were "principally … limited to the skin, [of] which there have been no significant problems," and joint laxity (but without a pattern of dislocations). (R. 217, 219, 406-407). The ALJ is correct in stating that "[t]he validity of the Ehlers-Danlos diagnosis is not being questioned," and that it is "the functional consequence of the diagnosis and the claimant's medical signs and findings … that [he] must evaluate and decide." (R. 220). The opinions of Dr. Lommatzsch and Dr. Alexander conflict on precisely this point.

Typically, greater weight is accorded to the opinions of a treating physician, "because the treating physician has necessarily examined the applicant and has a treating relationship with the applicant." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (citing *Johnson*, 434 F.3d at 654). In weighing the medical opinion testimony, the ALJ recognized this, stating that he was according less weight to the testimony of Dr. Kelly, the medical geneticist, on the basis that "he is more of an academic than treating doctor and while he participates in the identification of genetic illnesses he is not her normal treating physician." (R. 219-220). Yet the ALJ proceeded to disregard critical portions of the assessment of her treating physician, Dr. Lommatzsch, without explanation, and apparently in reliance upon the testimony of the non-treating physician, Dr. Alexander.

In the second ALJ decision, a brief reference was made to the first decision's determination "that the record did not support Dr. Lommatzsch's statements that the claimant had a medical condition(s) that could reasonably be expected to produce pain that would interfere with the claimant's activities and concentration or require her to take unpredictable and/or lengthy rest periods during the workday." (R. 214). Turning to this portion of the first decision, it appears the

ALJ gave the opinions of Dr. Lommatzsch less-than-controlling weight because the Physical Limitations Assessment form was apparently completed "on the day that he first saw the claimant; therefore, his assessment was not based on a long history of treatment." (R. 23). Having now accorded great weight to the assessment of Dr. Lommatzsch, and having cited approvingly other portions of this very document, the ALJ cannot use this as a basis for discrediting these statements.

Furthermore, the ALJ stated in his first decision that "[t]he record does not document medical conditions that could reasonably be expected to produce these limitations." (R. 24). Without more, this too cannot serve as a basis for discrediting these limitations. The ALJ previously had denied benefits after determining that Dr. Kelly's report on Ehlers-Danlos syndrome, which he considered to be "the record's best description" of the condition, "does not suggest that [it] … would produce the limitations that Dr. Lommatzsch identified or the symptoms or limitations that the claimant alleged." (*Id*.). In effect, the ALJ had previously found insufficient evidence of causation. In light of the introduction of a statement by Dr. Kelly into the record linking Christmas's alleged symptoms to her Ehlers-Danlos syndrome,[5] the Court held in its Memorandum Opinion issued February 22, 2006, that this statement "render[ed] the ALJ's decision contrary to the weight of the evidence, when the medical records also suggested that Plaintiff's symptoms were due to her syndrome and her leg length discrepancy." (R. 259, 352). To the extent that the ALJ again seeks to

---

[5] The statement from Dr. Kelly provides:

> TO WHOM IT MAY CONCERN:
> Re: Regina M. Christmas
> I am Ms. Christmas' medical geneticist. Due to her Ehlers Danlos syndrome and resultant degenerative arthritis, she experiences significant knee, hip and low back pain upon prolonged standing/walking and upon prolonged sitting with her feet on the floor. In order to help control these symptoms, she must recline for periods frequently throughout the day.

(R. 352).

discredit these limitations identified by Dr. Lommatzsch merely by referencing his prior statement doubting causation, that avenue is also foreclosed.

This conflict of medical opinion is not merely peripheral to a resolution of Christmas's claim. At the hearing on July 19, 2006, the vocational expert, Bonnie Martindale, testified that she knew of no jobs available for a person who suffered from these two limitations. (R. 413-415).

> ALJ: All right. Now if somebody's in pain where they can't get up and go to work on a regular basis, perhaps can't concentrate even on the, on the simple, unskilled tasks that you mentioned, maybe miss two or three days a, a month, had to maybe lay down during the day two to three hours a day, would they be able to do any of those [sedentary jobs]?
>
> VE: No, sir. I don't know of any employer that would allow someone laying down during the day or missing two to three days. General rule of absenteeism is one-and-a-half to two days per month or 18 to 22 days a year after [INAUDIBLE].
>
> …
>
> ATTY: Outside of those breaks at the established times by the employer, would, as these jobs are normally performed in the national economy, would the employers allow any opportunity for lying down?
>
> VE: That was asked, and I had said no.

(R. 413-414).

Finally, the Court is faced with the question of whether to reverse and remand the final decision of the Commissioner solely to calculate and pay proper benefits to Christmas, or whether to remand with instructions directing the ALJ to reconsider and adequately explain his basis for denying benefits. The Magistrate Judge, in his Report & Recommendation, found nothing in the record contrary to the opinion of Dr. Kelly that Christmas "must recline for periods frequently throughout the day." Report & Recommendation, at 5. Further, the Magistrate Judge stated that the ALJ "appears simply to have substituted his judgment for those of both a specialist in the field and

plaintiff's primary treating source." *Id.* at 5-6. On these bases, the Magistrate Judge recommended that the Court reverse the final decision of the Commissioner, and remand to calculate and pay proper benefits to Christmas. *Id.* at 6. The Court disagrees.

The Report & Recommendation does not take into account the fact that the ALJ relied heavily upon the testimony of the medical expert, Dr. Alexander, and gave his testimony "great weight." Certain portions of his testimony can reasonably be said to discredit the opinions of Dr. Kelly and Dr. Lommatzsch. It is not that the ALJ simply substituted his judgment for those of the claimant's treating physicians, but that the ALJ did not adequately explain his (apparent) reliance upon the testimony of Dr. Alexander to discredit the opinions of Dr. Lommatzsch and Dr. Kelly.

As courts within this circuit have noted, deference to the fact-finding function of the ALJ generally counsels in favor of a remand. *See e.g.*, *Timmerman v. Commissioner*, No. 2:07-3745, 2009 WL 500604, at *5 (D.S.C. Feb. 26, 2009) (citing *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) ("Ordinarily, when a claimant appeals from the Commissioner's denial of benefits and we find that such a denial was improper, we, out of 'our abundant deference to the ALJ,' remand the case for further administrative proceedings.")). Furthermore, the Court is not presented with a situation in which a remand would serve no useful purpose. *See e.g.*, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980). Under this relatively narrow set of circumstances in which the ALJ gave "great weight" to the opinions of two physicians that conflict in a material way, and the Court "can find little or no indication why the ALJ credited" one physician's views over the other, *Murphy*, 810 F.2d at 437, a remand for further explanation by the ALJ is the appropriate course of action.

The Court is reluctant to remand Christmas's claim for a second time, especially given the fact that she initially filed her claim for disability benefits in 2002. However, in this case, the Court is "faced with a situation in which [it] cannot know why the ALJ rejected relevant evidence in the

record," namely concerning the two limitations identified by Dr. Lommatzsch, and as a result, holds that "a remand is necessary to clarify the basis for the decision to deny benefits." *Durham*, 2000 WL 1033060, at *5.

Finally, Christmas also argued in her Motion for Summary Judgment (though the issue did not form a basis for the Magistrate Judge's Report & Recommendation, or the Commissioner's Objections thereto) that the ALJ committed reversible error by failing to include all of Christmas's limitations in his hypothetical question posed to the vocational expert. *See* Plaintiff's Memorandum in Support, at 21-29. As the Court has found that the ALJ did not sufficiently explain the basis for his decision to disregard certain limitations identified by Dr. Lommatzsch, it would be premature for the Court to pass upon whether these limitations should have been included in the hypothetical question. "[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and *it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments*." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)) (emphasis added). If the ALJ, after consideration of all of the evidence and after proper explanation, determines that Christmas does not suffer from these certain limitations, he does not need to include them in his hypothetical questions. If the converse occurs, such limitations would have to be included. The Court notes that "the Commissioner … bears the evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community." *Hines*, 453 F.3d at 567.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge B. Waugh Crigler.

Entered this ____17 th____ day of March, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE